**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**LLEWELLYN GEORGE, 02-A-0092,**

                                        **Plaintiff,**                    **05-CV-0510A(Sr)**

**v.**

**JAMES CONWAY, et al.,**

                                **Defendants.**

_____

## REPORT, RECOMMENDATION AND ORDER

              This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #25.


              Plaintiff filed this _pro se_ action on or about July 22, 2005, seeking relief

pursuant to 42 U.S.C. § 1983.  Dkt. #1.  Plaintiff alleges that while an inmate at the

Attica Correctional Facility, his rights pursuant to the First, Eighth, and Fourteenth

Amendments to the United States Constitution were violated.  _Id_.  Currently before the

Court are plaintiff's motion for summary judgment (Dkt. #42) and defendants' cross-

motion for summary judgment (Dkt. #60).  For the following reasons, it is recommended

that plaintiff's motion for summary judgment be denied and defendants' cross-motion

for summary judgment be granted in its entirety.

## BACKGROUND

Plaintiff, proceeding *pro se*, commenced this action on or about July 22, 2005, against defendants James Conway, Randy James, Jeffrey Bea, Carol Edwards, Rosalind Rosolowski, Darryl Borawski, Rabbi S. Charitonow and Don Lopes alleging violations of his rights pursuant to the First, Eighth and Fourteenth Amendments to the United States Constitution while he was housed at the Attica Correctional Facility ("Attica").  On each of his two claims, plaintiff seeks $15 million in compensatory damages and $10 million in punitive damages.  It bears noting that plaintiff has also filed a separate action against several of the same defendants named herein, entitled *Llewellyn George v. Glenn S. Goord, et al.*, Case No. 05-CV-788 and alleging causes of action arising out of similar facts.  That case is also pending before Chief United States District Judge Richard J. Arcara and has been referred to the undersigned for the handling of all pretrial matters and to hear and report on dispositive motions.  Cross-motions for summary judgment are also pending in that action and will be the subject of a separate Report, Recommendation & Order.

In his first claim, plaintiff alleges that from April 25, 2005 to June 8, 2005, defendants Rosalind Rosolowski, Don Lopes, and Carol Edwards "deliberately deprived [him] of [his] kosher meals" in violation of his rights pursuant to the First and Fourteenth Amendments to the United States Constitution.  Specifically, plaintiff alleges that defendants Rosolowski, Lopes and Edwards,

> deliberately deprived me of my kosher meals from 4-25-05
> to 6-8-05 after I had missed three meals, unintentionally.  I
> was never issued a date to report to the diet line.  After the

> Inmate Grievance Program had agreed with my complaint
> and recommended that my kosher meals be reinstated on 5-
> 4-05, I was still deprived of my kosher meals until 6-8-05.

Dkt. #1, p.9.  In his second claim, plaintiff alleges that from June 8, 2005 to

"unresolved" (no later than July 22, 2005, the date when the instant action was

commenced), defendants James Conway, Randy James, Jeffrey Bea, Darryl Borawski,

and Rabbi S. Charitonow violated his rights pursuant to the First, Eighth and Fourteenth

Amendments to the United States Constitution.  Plaintiff's second claim states,

> my kosher meals were exposed to hair, dust particles from
> construction work, the stench of feces because each of the
> above mentioned defendants denied my numerous of [sic]
> requests to have the plastic wrapper removed from the
> kosher trays in my presence, even after I had repeatedly
> complained that certain food items were being stolen from
> my kosher trays.

Dkt. #1, p.21.


**Kosher Meal Plan, a/k/a Cold Alternative Diet**

On April 18, 2005, plaintiff signed a Cold Alternative Diet ("CAD") meal

plan, or kosher meal plan whereby he agreed that he would miss no more than three

meals per week.  Dkt. #61, ¶ 3; Dkt. #67, p.5.  Thereafter, the CAD meal plan was

approved on April 19, 2005 by defendant Rabbi S. Charitonow, Jewish Chaplain,

defendant Rosalind Rosolowski, Coordinating Chaplain and defendant Carol Edwards,

Deputy Superintendent for Programs.  Dkt. #67, ¶ 4 and p.5.  Also on April 19, 2005,

consistent with standard procedure, defendant Carol Edwards sent a copy of the CAD

agreement to plaintiff through the facility mail system.  Dkt. #61, ¶ 4; Dkt. #67, ¶ 4.  At

that time, sending an inmate a copy of the CAD agreement was sufficient to put the inmate on notice that the CAD meal plan had commenced. *Id*.

On April 25, 2005, plaintiff was removed from the CAD meal plan for missing too many meals. Dkt. #61, ¶ 5. For the period April 20, 2005 to April 23, 2005, plaintiff missed eleven meals. *Id*. On April 25, 2005, defendant Don Lopes, Attica Food Service Administrator, sent plaintiff a memo advising him that he would be removed from the CAD meal plan due to missed meals. Dkt. #61, ¶ 6; Dkt. #76, ¶ 6 and Exhibit B. Removal from the CAD meal plan could take a couple of days before becoming effective. *Id*. On April 26, 2005, plaintiff signed the Kosher Sign-In Sheets for breakfast and lunch, however, plaintiff's name does not appear on any of the days preceding or following April 26, 2005. Dkt. #61, ¶ 7; Dkt. #76, ¶ 7.

**Grievance No. A-48662-05 - Removal from CAD**

On April 27, 2005, plaintiff filed Grievance No. A-48662-05 alleging that he was being denied his kosher meals. Dkt. #61, ¶ 8. Specifically, plaintiff stated:

> I did not report to the diet line, because I had been under the impression that I had to wait for some kind of notice, and did not want to be charged with being out of place. I was never advised as to when, exactly, my kosher meals would commence, not even the application I had signed for diet, kosher meals, program had given me any kind of indication.

Dkt. #75, p.11. On May 4, 2005, the Inmate Grievance Review Committee ("IGRC") recommended that plaintiff be placed back on the list and that plaintiff should not be removed from the diet because plaintiff was never informed when the diet would begin.

Dkt. #61, ¶ 9; Dkt. #75, p.12.  Thereafter, on May 5, 2005, plaintiff noted on the bottom

of the form setting forth the IGRC recommendation that although he agreed with the

IGRC response, he wished to appeal to the Superintendent because he still had not

received his kosher meals.  Dkt. 61, ¶ 12; Dkt. #75, ¶ 7 and p.12.  On May 11, 2005,

plaintiff was transferred from the housing unit "A-Block" to the Special Housing Unit

("SHU") because of an incident that occurred on May 10, 2005.  Dkt. #61, ¶ 10.


On May 15, 2005, plaintiff wrote defendant Rosalind Rosolowski a letter

claiming that she had removed him from the "kosher meal list."  Dkt. #61, ¶ 11; Dkt.

#72, ¶ 6 and p.10.  In his letter, plaintiff also notes that he filed a grievance and that the

IGRC recommended that his kosher meals be reinstated.  *Id*.  Notwithstanding the

IGRC's recommendation of reinstatement, plaintiff complained that his kosher meals

had not been reinstated.  *Id*.  Defendant Rosolowski noted on the bottom of plaintiff's

letter, "I do not remove anyone from KOSHER DIETS - the kitchen keeps track on [sic]

attendance + writes the decision not me - ..."  Dkt. #72, p.10 (emphasis in original).


On May 17, 2005, plaintiff wrote to defendant  Lopes, the Food Service

Administrator at Attica, concerning the grievance he had filed after his removal from the

CAD meal plan.  Dkt. #76, ¶ 8, p.16.  As in his May 15, 2005 letter to defendant

Rosolowski, plaintiff noted that the IGRC recommended that his kosher meals be

reinstated.  *Id*.  Notwithstanding the IGRC's recommendation of reinstatement, plaintiff

complained to defendant Lopes that his kosher meals had not been reinstated.  *Id*.  On

May 23, 2005, defendant Lopes responded to plaintiff's May 17, 2005 letter stating, in

-5-

part, that the Food Service Department is bound by both the directives from Albany and the operating procedures at Attica.  Dkt. #76, ¶ 9 and p.18.  Moreover, defendant Lopes reminded plaintiff that he was removed from the kosher meal plan for missing too many meals and that the actions taken by the Food Service Department were in accordance with DOCS' directives and procedures.  *Id*.


On or about May 25, 2005, defendant Superintendent Conway denied plaintiff's appeal stating,

> The issue of reinstatement to the cold alternative diet menu
> needs to be addressed to the chaplain's office.  Notification
> of the original diet was forwarded to you and you were
> removed for missing required meals.  There is now a time
> period to wait before being put back on the menu.

Dkt. #61, ¶ 12; Dkt. #75, ¶ 7 and p.12.  Because plaintiff was removed from the diet plan for missing too many meals, he had to wait thirty days before being put back on the kosher diet plan. Dkt. #61, ¶ 13.  On May 26, 2005, plaintiff appealed Superintendent Conway's decision to the Central Office Review Committee ("CORC"). Dkt. #75, p.14.  CORC upheld Superintendent Conway's determination, stating,

> Upon full hearing of the facts and circumstances in the
> instant case, and upon recommendation of the Division of
> Nutritional Services, the action requested herein is hereby
> accepted only to the extent that CORC upholds the
> determination of the Superintendent for the reasons stated.
> CORC notes from additional investigation that the grievant
> signed an agreement to participate in the Cold Alternative
> Diet Program on 5/31/05 and was approved on 6/06/05.

Dkt. #75, p.19.  On May 31, 2005, plaintiff was eligible for reinstatement to the CAD meal plan and signed a new CAD agreement which was approved by Rabbi

Charitonow, Rosalind Rosolowski and Carol Edwards on June 6, 2005.  Dkt. #75, ¶ 8 and p.13.

**Grievance No. A-48969-05**

On or about June 13, 2005, plaintiff sent a letter to defendant Darryl Borawski, formerly a Sergeant at Attica, complaining that he was not receiving hot water with his Kosher meals, that certain food items were missing from his tray and requesting that the corrections officers remove the plastic wrap from his tray in front of him.  Dkt. #61, ¶ 16; Dkt. #79, ¶ 5 and p.14.  On June 15, 2005, plaintiff filed Grievance No. A-48969-05 (a letter to Theresa Dyson) stating,

> I am being denied portions of my food each day, because certain food items are always missing from my kosher trays, and I am not receiving any hot water.  I have addressed these issues to the Rabbi, the food administrator, the S.H.U. officers and supervisors, but nothing is being done, because of the previous grievances I had filed.  Action requested my [sic] grievant, is for the S.H.U. officers to remove the plastic wrapper from the kosher trays, in the presence of the S.H.U. prisoners, see to it that the S.H.U. prisoner's [sic] are provided with hot water as they are entitled to, and that the S.H.U. prisoners be issued menus for the kosher diet.

Dkt. #79, p.17.  At the time of the incidents alleged in the complaint, Theresa Dyson was the Inmate Grievance Program Supervisor and in a June 20, 2005 Investigative Report, she found that plaintiff produced no evidence that certain foods were missing from his trays.  Dkt. #61, ¶ 20; Dkt. #74, p.28.  Theresa Dyson further found that hot water was distributed on a daily basis and that the plastic wrapping covering the meals will not be removed in the presence of the inmates.  *Id*.  Moreover, she found that there was no provision for SHU inmates to receive menus.  *Id*.  Finally, she concluded that

there was no evidence to support plaintiff's assertion that there had been retaliation for plaintiff's prior grievances. *Id*. Theresa Dyson's ultimate conclusion was that plaintiff's grievance was without merit. *Id*. The IGRC denied plaintiff's grievance and defendant Superintendent Conway endorsed the unanimous response of the IGRC. Dkt. #61, ¶ 20; Dkt. #75, ¶ 9 and pp.31 and 33. Thereafter, the CORC upheld the Superintendent's ruling. Dkt. #75, p.34.

At the time plaintiff filed Grievance No. A-48969-05, he was housed in SHU. Dkt. #61, ¶ 17. As noted above, all inmates housed in SHU are offered hot water on a daily basis. *Id*. Moreover, for security reasons, the plastic wrapping covering meals may not be removed in front of inmates. *Id*. All meals delivered to SHU are in a closed Styrofoam tray. *Id*. at ¶ 18. In order to preserve sanitation and to prevent contraband from being transported, before the kosher meals leave the kitchen, the entire tray is wrapped in plastic wrap. *Id*. The meals are then transported on a cart to the SHU kitchen or preparation area where a porter (designated inmate) under the supervision of a SHU officer unwraps the Styrofoam tray to inspect for contraband. *Id*. A SHU officer then delivers each meal to the inmates' cell. *Id*. For the safety and security of the inmates and staff, no contraband whatsoever may be on the SHU gallery. *Id*. Section 304.2(a) of DOCS Directive #4933 concerns the standards of operation of the SHU and provides that "[a]ll food items will be delivered to the inmates upon receipt from the food service area, and in a manner that will ensure receipt of the food in an appropriate condition." *Id*. at ¶ 21.

**Grievance No. A-49087-05**

On June 27, 2005, plaintiff sent a letter to Thomas Eagen, the former

Director of the Inmate Grievance Program, alleging that his kosher meals were being

deliberately mishandled, tampered with and exposed to unsanitary conditions.  Dkt.

#61, ¶ 22; Dkt. #64, ¶ 10 and pp.47-48.  By letter dated July 6, 2005, Thomas Eagen

acknowledged receipt of plaintiff's June 27, 2005 letter and reminded plaintiff that

pursuant to DOCS' policy, Directive #4040, the Inmate Grievance Program "provides

inmates with an orderly, fair, simple and expeditious method of resolving grievances

pursuant to the Correction Law."  Dkt. #64, p.49.  Thomas Eagen further stated that

Directive #4040 "makes no provision for an inmate to refer grievances directly to

Central Office."  *Id*.  Plaintiff's letter was returned to him and Thomas Eagen's office did

not retain a copy.  *Id*.  On June 30, 2005, plaintiff wrote to defendant Don Lopes

alleging that his kosher meals were being tampered with and requesting that the plastic

wrapper be removed from the kosher trays in the presence of the prisoners.  Dkt. #76

¶11 and p.34.

On July 12, 2005, plaintiff filed Grievance No. A-49087-05 complaining of

the odors and cleanliness of the SHU and requesting that the cells be cleaned and

prisoners given showers, new clothing and new bedding.  Dkt. #61, ¶ 26; Dkt. #75, p.53.

The IGRC denied plaintiff's request stating,

> Grievant is advised he may clean his own cell be [sic]
> addressing this to his area Supervisor along with other
> issues.  No evidence was presented verifying the odor
> complaints or other [sic].  SHU inmates not being fed [sic].

> Further, each cell ventilation system should be working
> properly.

Dkt. #75, p.50.  Although the following series of events relating to Grievance No. A-49087-05 occurred after the filing of plaintiff's complaint, for purposes of completeness, this Court will describe them briefly.  On or about August 9, 2005, Inmate Grievance Supervisor George Struebel made the following notation, "made rounds on 8/2 in SHU no problems noted as described in grievance."  Dkt. #75, p.54.  On or about August 11, 2005, defendant Superintendent Conway denied plaintiff's grievance stating,

> [e]very effort is made to maintain a safe and hygenic [sic]
> living space.  Galleries and cells are cleaned.  Inmates are
> fed three times a day and showers provided per directive.
> Sufficient bedding materials and clothing are also supplied.
> The IGP Supervisor recently made rounds in SHU and did
> not find the conditions existent as you describe.

Dkt. #75, p.51.  Plaintiff appealed the Superintendent's ruling to CORC, claiming that the Superintendent's views were "deliberately biased and misleading and the I.G.P. supervisor is a fraud."  Dkt. #75, p.51.  CORC upheld the Superintendent's determination and reasoned that it had not been presented with sufficient evidence to substantiate any malfeasance by the staff.  Dkt. #75, p.51.  Moreover, CORC advised plaintiff to address his housing concerns to the area supervisor.  *Id*.

### DISCUSSION AND ANALYSIS

As a threshold matter, defendants argue that all plaintiff's claims against them in their official capacity must be dismissed pursuant to the Eleventh Amendment to the United States Constitution.  With respect to plaintiff's claims against defendants James Conway, Rosalind Rosolowski and Carol Edwards, defendants argue that they

must be dismissed for lack of personal involvement.  Defendants Rosolowski, Edwards
and Lopes argue that plaintiff cannot establish that his right to free exercise of religion
was violated because plaintiff was not deliberately deprived on his kosher meals from
April 25, 2005 to June 8, 2005.  Defendants Conway, James, Bea, Borawski and
Charitonow also argue that plaintiff cannot establish that his right to free exercise of
religion was violated or that his right to be free from cruel and unusual punishment was
violated because plaintiff cannot establish that defendants were responsible for
exposing plaintiff's kosher meals to hair, dust and the stench of feces and/or
defendants tampered with his kosher meals.  Similarly, defendants further argue that
plaintiff's claims of being deprived of his kosher meals from April 25, 2005 to June 8,
2005 and his kosher meals being exposed to hair, dust particles and the stench of
feces do not rise to the level of a violation of his rights under the Fourteenth
Amendment.  Lastly, defendants claim that they are entitled to qualified immunity.
Because the Court agrees that defendants are entitled to judgment as a matter of law
on each of plaintiff's claims, the Court need not reach the issue of whether defendants
are entitled to qualified immunity.  For the following reasons, it is recommended that
plaintiff's motion for summary judgment be denied and defendants' motion for summary
judgment be granted.


**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798

(W.D.N.Y. 1997) (internal citations omitted).


A fact is "material" only if it has some effect on the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*,

140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*,

502 U.S. 849 (1991).


Once the moving party has met its burden of "demonstrating the absence

of a genuine issue of material fact, the nonmoving party must come forward with

enough evidence to support a jury verdict in its favor, and the motion will not be

defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party

seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the

> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


## Official Capacity Claims

Plaintiff commenced the instant action against James Conway, Superintendent at Attica; Randy James, former Deputy Superintendent of Security at Attica; Jeffrey Bea, a Lieutenant at Attica; Carol Edwards, former Deputy Superintendent of Programs at Attica; Rosalind Rosolowski, Coordinating Chaplain at Attica; Darryl Borawski, former Sergeant at Attica; Rabbi S. Charitonow, former Rabbi at Attica; and Don Lopes, Food Service Administrator at Attica in their personal and official capacities.  Dkt. #1.  Plaintiff's claims against the above-named defendants are asserted pursuant to 42 U.S.C. § 1983.  In order to state a claim pursuant to § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94,98 (2d Cir. 1993).


The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,90-100 (1984).  It is well-settled that states are not "persons" under § 1983, and thus, Eleventh Amendment immunity is not

abrogated by that statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71

(1989). The Eleventh Amendment bar extends to agencies and officials sued in their

official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly,

plaintiff's claims against the defendants in their official capacities are barred by the

Eleventh Amendment and it is recommended that those claims be dismissed. Based

on the foregoing, the balance of this Court's Report, Recommendation and Order will

address plaintiff's claims against defendants in their individual capacities.


**Personal Involvement**

It is well settled that the personal involvement of defendants in an alleged

constitutional deprivation is a prerequisite to an award of damages under § 1983.

*Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir.

1989). Personal involvement may be shown by evidence that: (1) the defendant

participated directly in the alleged constitutional violation; (2) was informed of the

violation and failed to remedy the wrong; (3) created or permitted the continuation of a

policy or custom under which unconstitutional practices occurred; (4) was grossly

negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating

unconstitutional acts were occurring. *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21

F.3d 496, 501 (2d Cir. 1994).

### James Conway

In his second claim, plaintiff alleges that for the period June 8, 2005 to "unresolved," defendant James Conway, Superintendent at Attica, knew that plaintiff's meals were being exposed to hair and dust particles and the stench of feces.  Dkt. #1. Defendant Conway argues that he cannot be held liable simply because of his position as the Superintendent at Attica.  Dkt. #63, p.7.  Plaintiff filed two grievances, A-48969-05 (June 15, 2005) and A-49087-05 (July 12, 2005), complaining that his kosher meals were being tampered with and complaining of the odors and cleanliness of the SHU. Grievance No. A-48969-05 was fully investigated by Theresa Dyson, the Inmate Grievance Program Supervisor, and she concluded that plaintiff's grievance was without merit.  Dkt. #61, ¶ 20; Dkt. #74, p.28.  Thereafter, the IGRC denied plaintiff's grievance and defendant Superintendent Conway endorsed the unanimous response of the IGRC.  Dkt. #61, ¶ 20; Dkt. #75, ¶ 9 and pp.31 and 33.  The CORC upheld the Superintendent's ruling.  Dkt. #75, p.34.

Grievance No. A-49087-05 was also fully investigated by Theresa Dyson and the IGRC denied plaintiff's request stating,

> Grievant is advised he may clean his own cell be [sic] addressing this to his area Supervisor along with other issues.  No evidence was presented verifying the odor complaints or other [sic].  SHU inmates not being fed [sic]. Further, each cell ventilation system should be working properly.

Dkt. #75, p.50.  After plaintiff filed the instant complaint, on or about August 9, 2005, Inmate Grievance Supervisor George Struebel made the following notation, "made

rounds on 8/2 in SHU no problems noted as described in grievance." Dkt. #75, p.54.

On or about August 11, 2005, defendant Superintendent Conway denied plaintiff's

grievance stating, "[e]very effort is made to maintain a safe and hygenic [sic] living

space.  Galleries and cells are cleaned.  Inmates are fed three times a day and

showers provided per directive.  Sufficient bedding materials and clothing are also

supplied.  The IGP Supervisor recently made rounds in SHU and did not find the

conditions existent as you describe." Dkt. #75, p.51.  Plaintiff appealed the

Superintendent's ruling to CORC, claiming that the Superintendent's views were

"deliberately biased and misleading and the I.G.P. supervisor is a fraud." Dkt. #75,

p.51.  CORC upheld the Superintendent's determination and reasoned that it had not

been presented with sufficient evidence to substantiate any malfeasance by the staff.

Dkt. #75, p.51.  Moreover, CORC advised plaintiff to address his housing concerns to

the area supervisor. *Id*.


        The record before this Court is simply devoid of any evidence to support

a conclusion that defendant Conway: participated in any way in the alleged

constitutional violation; was informed of the violation and failed to remedy the wrong;

created or permitted the continuation of a policy under which unconstitutional practices

occurred; was grossly negligent in supervising subordinates who committed the

wrongful acts; or exhibited deliberate indifference to the rights of inmates by failing to

act on information indicating unconstitutional acts were occurring.  Moreover, there is

no evidence that defendant Conway ever dealt directly with plaintiff or oversaw the

supervision of the investigation into plaintiff's grievances.  Accordingly, because

defendant Conway was not personally involved in the alleged constitutional violation, it
is recommended that the claim against defendant Conway be dismissed.


### Rosalind Rosolowski and Carol Edwards

In his first claim, plaintiff claims that defendants Rosolowski and Edwards,
for the period April 25, 2005 to June 8, 2005, deprived plaintiff of his kosher meals.
Dkt. #1.  In support of their motion for summary judgment, defendants maintain and
plaintiff does not dispute that the Food Service Administrator, defendant Don Lopes,
bears the sole responsibility for ensuring that inmates who are approved to receive a
CAD are, in fact, provided with kosher meals.  Dkt. #63, p.9.  Notwithstanding the
foregoing, defendants Rosolowski and Edwards' involvement with respect to plaintiff's
participation in the CAD program was minimal at most.


On April 19, 2005, defendants Rosalind Rosolowski, Coordinating
Chaplain and Carol Edwards, Deputy Superintendent for Programs approved plaintiff's
CAD meal plan.  Dkt. #67, ¶ 4 and p.5.  Also on April 19, 2005, consistent with standard
procedure, defendant Carol Edwards sent a copy of the CAD agreement to plaintiff
through the facility mail system.  Dkt. #61, ¶ 4; Dkt. #67, ¶ 4.  On May 15, 2005, plaintiff
wrote defendant Rosalind Rosolowski a letter claiming that she had removed him from
the "kosher meal list."  Dkt. #61, ¶ 11; Dkt. #72, ¶ 6 and p.10.  In his letter, plaintiff also
noted that he filed a grievance and that the IGRC recommended that his kosher meals
be reinstated.  *Id*.  Notwithstanding the IGRC's recommendation of reinstatement,
plaintiff complained that his kosher meals had not been reinstated.  *Id*.  Defendant

Rosolowski noted on the bottom of plaintiff's letter, "I do not remove anyone from KOSHER DIETS - the kitchen keeps track on [sic] attendance + writes the decision not me - ..." Dkt. #72, p.10 (emphasis in original). Thus, absent any evidence that defendants Rosolowski and Edwards were involved in any way in the alleged constitutional violation; were informed of the violation and failed to remedy the wrong; created or permitted the continuation of a policy under which unconstitutional practices occurred; were grossly negligent in supervising subordinates who committed the wrongful acts; or exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring, it is recommended that the claims against defendants Rosalind Rosolowski and Carol Edwards be dismissed.

**First Amendment Claims**

Plaintiff alleges that defendants Rosolowski, Edwards and Lopes deliberately deprived him of his kosher meals for the period April 25, 2005 to June 8, 2005, in violation of his rights under the First Amendment to the United States Constitution. Moreover, in further violation of his rights under the First Amendment, plaintiff alleges that by reason of defendants Conway, James, Bea, Borawski and Charitonow's refusal to have the plastic wrapper removed from plaintiff's food in his presence, plaintiff's kosher meals were exposed to hair, dust particles and the stench of feces.

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir.2003), *citing Pell v. Procunier*, 417 U.S. 817, 822 (1974).  However, "[b]alanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990). As a result, the free exercise claims of prisoners are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.  *Ford*, 352 F.3d at 588.  Accordingly, a regulation that burdens a protected right will pass constitutional muster if it is reasonably related to legitimate penological interests. *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir.2006), *citing O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) and *Turner v. Safley*, 482 U.S. 78, 89 (1987).

It is the inmate's initial burden to demonstrate that the disputed conduct substantially burdens his sincerely held religious beliefs.[1]  *Salahuddin*, 467 F.3d at

---

[1] In *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003), the Second Circuit noted a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, but declined to resolve the issue and instead assumed the continued applicability of the substantial burden test.  Recent cases suggest that the Second Circuit resolved the split in *Salahuddin v. Goord* by subscribing to the substantial factor test.  *Koehl v. Greene*, No. 05-CV-582, 2008 WL 4822520, *7, n.11 (N.D.N.Y. Oct. 31, 2008); *Livingston v. Griffin*, No. 04-CV-607, 2007 WL 1500382, at *15 (N.D.N.Y. May 21, 2007); *King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. Mar. 30, 2007).

474-75.  In assessing the sincerity of an inmate's religious beliefs, courts may not

"question the centrality of particular beliefs or practices to a faith, or the validity of

particular litigants' interpretations of those creeds."  *McEachin v. McGuinnis*, 357 F.3d

197, 201 (2d Cir.2004), *quoting Hernandez v. Commissioner of Internal Revenue*, 490

U.S. 680, 699 (1989).  Instead, courts may only consider whether a claimant sincerely

holds a particular belief and whether the belief is religious in nature."  *Ford*, 352 F.3d at

590.  Once a plaintiff has made this showing, the burden then shifts to the defendant to

identify a legitimate penological purpose justifying the decision under scrutiny.

*Salahuddin*, 467 F.3d at 474-75.  If such a legitimate penological interest is articulated,

its reasonableness is then analyzed under the test articulated by the United States

Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987).


Pursuant to *Turner*, the court must determine "whether the governmental

objective underlying the regulations at issue is legitimate and neutral, and [whether] the

regulations are rationally related to that objective.  *Koehl v. Greene*, No. 05-CV-582,

2008 WL 4822520, *7, n.11 (N.D.N.Y. Oct. 31, 2008), *citing Thornburgh v. Abbott*, 490

U.S. 404, 414 (1989).  Then, the court must ask whether the inmate is afforded

adequate alternative means for exercising the right in question.  *Thornburgh,* 490 U.S.

at 417.  Finally, the court must examine "the impact that accommodation of the

asserted constitutional right will have on others (guards and inmates) in the prison."  *Id*.

at 418.

### Alleged Deliberate Deprivation of Kosher Meals

After "unintentionally missing only three meals," plaintiff claims

that defendants Rosolowski, Lopes and Edwards deliberately deprived him of Kosher

meals from April 25, 2005 to June 8, 2005, in violation of his rights under the First

Amendment to the United States Constitution.  Dkt. #1. Defendants argue that "as far

as [they] knew, plaintiff signed and received the C.A.D. meal plan agreement, was on

notice that his participation in the C.A.D. had commenced, and that plaintiff missed too

many of the required meals, therefore he was removed from the C.A.D."  Dkt. #63,

p.12.  Once plaintiff was removed, pursuant to Attica's operating procedures, plaintiff

had to wait 30 days to be reinstated.  *Id*.  Thus, defendants' maintain that plaintiff was

not deliberately denied kosher meals.


In a case that bears a striking factual similarity to the instant case, Senior

United States District Judge John T. Curtin granted defendants' motion for summary

judgment with respect to an inmate's First Amendment claim concerning his removal

from the CAD program for failure to comply with DOCS mandatory meal attendance

policy. *Davidson v. Zon*, 94-CV-184 (W.D.N.Y. Sept. 10, 2002).[2]  Davidson

commenced his action while he was housed at Attica alleging that various DOCS

personnel had violated his right to practice his religion when they refused to allow him

to participate in Attica's kosher diet program unless he attended a minimum of 18 meals

---

[2] A copy of Senior United States District Judge Curtin's September 10, 2002 Decision and Order in *Davidson v. Zon* is attached to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of their Cross-Motion for Summary Judgment.  Dkt. #63, pp.33-53.

per week in the mess hall.  Dkt. #63, p.35.  As set forth in Judge Curtin's Decision and

Order, in November 1992, the Deputy Superintendent for Program Services at Attica

advised Davidson and others that DOCS was implementing a "pilot" Alternative Diet

program in an effort to standardize the kosher menu and eligibility procedures

statewide.  *Id*. at p.36.  Under the new program, inmates participating in the Alternative

Diet program were required to attend all meals in the mess hall, with no more than three

unexcused absences per week.  *Id*.  The mandatory attendance policy was

implemented as a waste-reduction and cost-control measure to monitor and manage

the special ordering, storage, and handling requirements involved with providing the

Alternative Diet system-wide.  *Id*.


For a period of time while receiving the kosher diet, Davidson was housed

in SHU and he received his meals in his cell.  *Id*. at p.36.  After his release back into the

general population, Davidson was required to receive and began receiving his meals in

the mess hall.  *Id*.  Shortly thereafter, Davidson found that sitting on the mess hall

stools for up to an hour three times a day exacerbated his chronic back condition.  *Id*.

So he decided to skip one meal per day and he requested a "feed in" order to have one

meal per day delivered to his cell.  *Id*.  After receiving a warning concerning missing

meals, Davidson was removed from the Alternative Diet list.  *Id*. at p.38.


Following the reasoning in *Turner* and *O'Lone*, Judge Curtin found that

the mandatory attendance component of DOCS' Alternative Diet program was

reasonably related to legitimate penological interests and, with respect to the second *Turner* factor, that Davidson had alternative means available to exercise his right to receive kosher food on a regular basis. *Id*. at pp.45-46.  Accordingly, Judge Curtin granted defendants' motion for summary judgment "to the extent it alleges that the removal of plaintiff from the Alternative Diet roster in October 1993 was based on an unconstitutional policy resulting in the denial of his rights under the Free Exercise Clause of the First Amendment." *Id*. at p.47.  With respect to Davidson's second claim that his free exercise rights were violated when DOCS officials refused his request to be reinstated to the C.A.D. program, Judge Curtin also granted defendants' motion for summary judgment, finding,

> DOCS' policy requires inmates who are suspended from participation in the Alternative Diet program for failure to comply with the mandatory attendance policy to go through a reevaluation process, including approval by both the Jewish Chaplain and the Deputy Superintendent for Program Services, to substantiate the inmate's Judaic background and intent to strictly observe Jewish dietary laws.  This process, as part of the overall policy already found by this court to be reasonably related to DOCS' legitimate interest in controlling its Nutritional Services budget, necessarily entails some level of institutional delay. Plaintiff has failed to allege or make a factual showing to suggest that the delay between the time his request for reinstatement was sent to the facility Chaplain on April 14, 1994, and his transfer out of Attica on May 2, 1994, constitutes anything more than typical and acceptable institutional delay which does not implicate the Free Exercise Clause.

Dkt. #63, p.51.

-23-

In the instant case, the record before this Court is devoid of any evidence submitted by plaintiff that any of the defendants deliberately deprived him of his kosher meals.  Absent any such evidence, plaintiff's wholly unsubstantiated and conclusory allegations are insufficient to sustain his claims.  Additionally, the period of delay following the IGRC's recommendation that plaintiff be reinstated to the CAD was nothing more than an institutional delay consistent with the policies and procedures in place at Attica which does not implicate the free exercise clause of the First Amendment.  Accordingly, for the same reasons articulated by Judge Curtin in *Davidson v. Zon*, this Court recommends that plaintiff's motion for summary judgment on his First Amendment claim concerning a deprivation of his kosher meals be denied and defendants' motion for summary judgment on the same claim be granted.

## Tampering with and Exposure of Kosher Meals

Plaintiff next claims that his kosher meals were exposed to hair, dust particles from construction work and the stench of feces because defendants Conway, James, Bea, Borawski and Charitonow denied his requests to have the plastic wrapper removed from his food in his presence, in violation of his First Amendment rights.  Dkt. #1.  With the exception of unsubstantiated and wholly conclusory allegations, plaintiff has failed to submit any evidence to support his claim that his meals were tampered with and exposed to hair, dust and the stench of feces or to identify those individuals who tampered with or exposed his meals to such conditions.

Plaintiff filed Grievance No. A-48969-05 on June 15, 2005 alleging that his kosher meals were being tampered with and requesting that the plastic wrap be removed in front of the inmates.  Specifically, plaintiff stated in Grievance No. A-48969-05 (a letter to Theresa Dyson):

> I am being denied portions of my food each day, because certain food items are always missing from my kosher trays, and I am not receiving any hot water.  I have addressed these issues to the Rabbi, the food administrator, the S.H.U. officers and supervisors, but nothing is being done, because of the previous grievances I had filed.  Action requested my [sic] grievant, is for the S.H.U. officers to remove the plastic wrapper from the kosher trays, in the presence of the S.H.U. prisoners, see to it that the S.H.U. prisoner's [sic] are provided with hot water as they are entitled to, and that the S.H.U. prisoners be issued menus for the kosher diet.

Dkt. #79, p.17.  In her June 20, 2005 investigative report, Theresa Dyson, Inmate Grievance Program Supervisor, found that plaintiff produced no evidence that certain foods were missing from his trays.  Dkt. #61, ¶ 20; Dkt. #74, p.28.  Theresa Dyson further found that hot water was distributed on a daily basis and that the plastic wrapping covering the meals could not be removed in the presence of the inmates.  *Id*. Moreover, she found that there was no provision for SHU inmates to receive menus.  *Id*. Finally, she concluded that there was no evidence to support plaintiff's assertion that there had been retaliation for plaintiff's prior grievances.  *Id*.  Theresa Dyson's ultimate conclusion was that plaintiff's grievance was without merit.  *Id*.  The IGRC denied plaintiff's grievance and defendant Superintendent Conway endorsed the unanimous response of the IGRC.  Dkt. #61, ¶ 20; Dkt. #75, ¶ 9 and pp.31 and 33.  The CORC upheld the Superintendent's ruling.  Dkt. #75, p.34.

At the time plaintiff filed Grievance No. A-48969-05, he was housed in SHU.  Dkt. #61, ¶ 17.  As noted above, all inmates housed in SHU are offered hot water on a daily basis.  *Id*.  Moreover, for security reasons, the plastic wrapping covering meals may not be removed in front of inmates.  *Id*.  All meals delivered to SHU are in a closed Styrofoam tray.  *Id*. at ¶ 18.  In order to preserve sanitation and to prevent contraband from being transported, before the kosher meals leave the kitchen, the entire tray is wrapped in plastic wrap.  *Id*.  The meals are then transported on a cart to the SHU kitchen or preparation area where a porter (designated inmate) under the supervision of a SHU officer will unwrap the Styrofoam tray to inspect for contraband.  *Id*.  A SHU officer then delivers each meal to the inmates' cell.  *Id*.  For the safety and security of the inmates and staff, no contraband whatsoever may be on the SHU gallery.  *Id*.  Section 304.2(a) of DOCS Directive #4933 concerns the standards of operation of the SHU and provides that "[a]ll food items will be delivered to the inmates upon receipt from the food service area, and in a manner that will ensure receipt of the food in an appropriate condition."  *Id*. at ¶ 21.

The unsubstantiated and wholly conclusory allegations submitted by plaintiff are insufficient to merit summary judgment in his favor and equally insufficient to defeat defendants' motion for summary judgment.  It is undisputed that none of the defendants were personally involved in the delivery of plaintiff's meals, nor were they involved in the inspection or delivery of the meals to plaintiff's cell.  Moreover, plaintiff has failed to identify any individuals who were involved in tampering with his kosher

meals or who exposed his kosher meals to hair, dust and the stench of feces. Additionally, plaintiff's complaints were not ignored, rather, they were fully investigated and found to be without merit.  Furthermore, following the reasoning set forth by Judge Curtin in *Davidson v. Zon*, the policy of removing the plastic wrap prior to the meal entering SHU is for legitimate penological reasons and there can be no dispute that plaintiff was receiving his kosher meals, so there was no need to have an alternative means available for plaintiff to exercise his right to receive kosher food on a regular basis.  Accordingly, it is recommended that plaintiff's motion for summary judgment be denied and defendants' motion for summary judgment be granted.

## Eighth Amendment Claims

As discussed at length above in connection with plaintiff's claims that his rights under the First Amendment were violated, plaintiff alleges that his kosher meals were exposed to hair, dust particles from construction work and the stench of feces because defendants Conway, James, Bea, Borawski, and Charitonow denied his requests to have the plastic wrap removed from his food in his presence, in violation of his rights under the Eighth Amendment.  For the following reasons, it is recommended that plaintiff's motion for summary judgment be denied and defendants' motion for summary judgment be granted.

The Eighth Amendment prohibits cruel and unusual punishment that involves the unnecessary and wanton infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Eighth Amendment to the United States Constitution imposes the

duty on prison officials to provide humane conditions of confinement and officials must ensure that inmates receive adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  In order to prevail on a claim of a violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective component. First, the deprivation must be, objectively, sufficiently serious, such as "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Id*. at 834, *citing Rhodes*, 452 U.S. at 347.  The second component requires that the prison official have a "sufficiently culpable state of mind."  *Id*.  In cases such as this, the state of mind is one of deliberate indifference to the health and safety of an inmate.  *Id*.


"Although the Constitution does not require that sentenced prisoners [receive] every amenity which one might find desirable, the Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (internal citations omitted).  The requirement established by the Eighth Amendment is augmented by the First Amendment which includes an inmates's clearly established right to a diet consistent with his or her religious scruples.  *Koehl v. Greene*, No. 05-CV-582, 2008 WL 4822520, *6 (N.D.N.Y. Oct. 31, 2008).  In a similar case, *Stokes v. Goord*, No. 03-CV-1402, 2007 WL 995624 (N.D.N.Y. Mar. 30, 2007), the plaintiff claimed that DOCS officials violated

his Eighth Amendment rights when they "served him food that was ... stale,

contaminated, rotten, spoiled, and re-heated." *Id*. at *4.  The court granted summary

judgment in favor of the defendants stating:

> [A]lthough Stokes contends that defendants delivered him
> the food, he fails to allege that he saw any of them actually
> contaminate or tamper with his food.  Further, Stokes filed
> various grievances complaining about the quality of the food,
> but the complaints were found to be without merit.
> Moreover, although Stokes makes general allegations
> regarding the health effects he suffered because of the
> alleged contaminated and inadequate food, there is nothing
> in his medical records to indicate that he suffered any
> adverse health effects from the food served to him by
> defendants ... Thus, under the circumstances, these
> deprivations are not sufficiently serious to constitute cruel
> and unusual punishment under the Eighth Amendment.

*Id*. at *4-5; *see also Livingston v. Goord*, 225 F.Supp.2d 321, 332-33 (W.D.N.Y. 2002)

(granting summary judgment to defendants regarding plaintiff's claim that his meals

were drugged because "even assuming that the food was contaminated by someone, it

would ... be speculative to conclude that these defendants were the culprits simply

because they delivered plaintiff's food to him."), *rev'd on other grounds*, *Livingston v.

Piskor*, 153 Fed. Appx. 769 (2d Cir. 2005).


Here, the record before this Court is devoid of any evidence to

demonstrate that plaintiff's food was contaminated in any way or that it was tampered

with in any way.  Plaintiff filed grievances alleging that his food had been mishandled,

contaminated and exposed to unsanitary conditions and each of those grievances was

fully investigated and found to be without merit.

With respect to the subjective component, a prison official will not be held liable for inhumane conditions, "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Supreme Court of the United States adopted "subjective recklessness" as is used in criminal law as the test for "deliberate indifference" under the Eighth Amendment. *Id*. at 839-40. Here, plaintiff is not alleging that he did not receive his kosher meals, to the contrary, plaintiff claims that although he received his kosher meals, those meals had been tampered with and contaminated because the defendants denied plaintiff's requests to have the plastic wrap removed in his presence. Each of plaintiff's grievances concerning his kosher meals was fully investigated and denied as being without merit. Moreover, as discussed at length above, plaintiff's kosher meals were delivered to him consistent with the policies and procedures. Accordingly, because plaintiff can satisfy neither the objective nor the subjective component of a claim under the Eighth Amendment, it is recommended that plaintiff's motion for summary judgment be denied and defendants' motion for summary judgment be granted.

**Fourteenth Amendment Claims**

To state a cognizable § 1983 due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin*, 91 F.3d 349, 351-52

-30-

(2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 316 (2d Cir. 1996).  Plaintiff claims that

his rights under the Fourteenth Amendment were violated because he was deprived of

kosher meals from April 25, 2005 to June 8, 2005 and because his kosher meals were

exposed to hair, dust particles and the stench of feces.  Dkt. #1.  Each of the

defendants assert that plaintiff received all the process he was due.  Dkt. #63, pp.25-

28.  Notwithstanding the allegations in the complaint, in his motion for summary

judgment and in opposition to defendants' motion for summary judgment, plaintiff does

not factually or legally distinguish between his claims under the First Amendment and

those claims he purports to bring under the Fourteenth Amendment.


An inmate's liberty interests are generally derived from two sources, the

Fourteenth Amendment Due Process Clause and state statutes or regulations.  *Arce v.*

*Walker*, 139 F.3d 329, 333 (2d Cir. 1998).

> With respect to interests arising directly under the Due
> Process Clause, the Supreme Court has narrowly
> circumscribed its scope to protect no more than the [sic] the
> most basic liberty interests in prisoners.  The Due Process
> Clause does not protect against every change in the
> conditions of confinement having a substantial adverse
> impact on inmates, if those changes are within the normal
> limits or range of custody which the conviction has
> authorized the State to impose.  Instead, the Due Process
> Clause protects against restraints or conditions of
> confinement that exceed [ ] the sentence in ... an
> unexpected manner.

*Id*. (Internal quotation marks and citations omitted).  In the instant case, plaintiff has

failed to identify a protected liberty interest in that he has failed to show how the

conditions of his confinement exceed his original sentence.  Moreover, even if plaintiff

could demonstrate a protected liberty interest, which he clearly cannot, plaintiff cannot demonstrate that he was deprived of anything without due process of law. As discussed above, plaintiff filed grievances claiming that he had been deprived of his kosher meals and that his kosher meals had been tampered with and contaminated. Each of those grievances was fully investigated and found to be without merit.

In order to establish the existence of a protected liberty interest under a state statute or regulation, an inmate must show that his confinement: "(1) creates an atypical and significant hardship ... in relation to the ordinary incidents of prison life, and (2) that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Arce v. Walker*, 139 F.3d 329, 334 (2d Cir. 1998) (internal quotations marks and citations omitted). Neither plaintiff's motion for summary judgment nor plaintiff's opposition to defendants' motion for summary judgment demonstrate that the alleged deprivation of his kosher meals or the alleged tampering with or contamination of his kosher meals created an atypical and significant hardship. Accordingly, because plaintiff has failed to show that he was deprived of a protected liberty interest without due process and that the alleged deprivation created an atypical and significant hardship, it is recommended that plaintiff's motion for summary judgment be denied and defendants' motion for summary judgment be granted.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for summary judgment (Dkt. #42) be **DENIED** and defendants' cross-motion for summary judgment (Dkt. #60) be **GRANTED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v.*

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
            March 25, 2009

                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**